UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALEXANDREA R. R.,

        Plaintiff,

  -v-                                              5:18-CV-121

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                       OF COUNSEL:

OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL    SIXTINA FERNANDEZ, ESQ.
   SOCIAL SECURITY ADMINISTRATION       Special Ass't United States Attorney
   REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10019

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Alexandrea R. R.[1] ("Alexandrea" or "plaintiff") brings this action seeking review

of defendant Commissioner of Social Security's ("Commissioner" or "defendant") final

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be used in this opinion.

decision denying her application for Supplemental Security Income ("SSI"). Both parties have filed their briefs, and defendant has filed the Administrative Record on Appeal. The motions will be considered on the basis of these submissions without oral argument.[2]

## II. BACKGROUND

On November 14, 2014,[3] Alexandrea filed an application for SSI alleging that her various mental impairments rendered her disabled beginning on January 31, 2014. R. at 222-28, 251.[4] Plaintiff's claim was initially denied on January 20, 2015. *Id*. at 140-44.

At Alexandrea's request, a hearing was held before Administrative Law Judge ("ALJ") Kenneth Theurer on January 6, 2016. R. at 97-127. Plaintiff, represented by non-attorney Michael Eason, appeared and testified. *Id*. The ALJ also heard testimony from Vocational Expert ("VE") Joseph Atkinson. *Id*.

Thereafter, the ALJ issued a written decision denying Alexandrea's application for benefits through February 9, 2017, the date of his decision. R. at 10-19. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. *Id*. at 1-3.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were

---

[2] Pursuant to General Order No. 18, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

[3] Other records refer to plaintiff's filing date as December 8, 2014, *see, e.g.*, R. at 222, but the distinction is immaterial to this appeal.

[4] Citations to "R." refer to the Administrative Record. Dkt. No. 8.

applied. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See Williams*, 859 F.2d at 258. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. *Id*. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." *Martone*,

70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. *Perez*, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).

"[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. ALJ's Decision

Applying this five-step disability determination process, the ALJ found that: (1) Alexandrea had not engaged in any substantial gainful activity since November 14, 2014, the application date; (2) plaintiff's mood disorder, anxiety disorder, psychosis, panic

disorder, and sleep disorder were all severe impairments within the meaning of the Regulations; (3) these mental impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 12-15.

At step four, the ALJ determined that while Alexandrea had no exertional limitations, her severe mental impairments limited her ability to do work-related mental activities. R. at 17. After analyzing the evidence in the record, the ALJ found plaintiff retained the RFC to:

> understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; and relate to and interact with others to the extent necessary to carry out simple tasks, although she should avoid work requiring more complex interaction or joint efforts to achieve work goals. The claimant should not have interaction with the public. She can handle reasonable levels of simple, work-related stress, in that she can make simple decisions directly related to the completion of her tasks and work in a position where she is not responsible for the work of others and with little change in daily routine, work duties or processes.

R. at 15.

Next, the ALJ determined that Alexandrea had no past relevant work. R. at 17. However, the ALJ found that plaintiff's RFC, considered together with her age and education, allowed her to perform jobs such as "laundry worker," "kitchen helper," and "mail clerk." *Id*. at 18. Because these jobs fit in with plaintiff's assessed limitations and were present in sufficient numbers in the national economy, the ALJ concluded plaintiff was not disabled during the relevant time period. *Id*. at 18-19. Accordingly, the ALJ denied plaintiff's application for benefits.

### D. **Alexandrea's Appeal**

Alexandrea contends the ALJ made two, related errors at step four of the sequential

disability analysis. According to plaintiff, the ALJ (1) failed to reconcile certain portions of a consultative examiner's opinion with the overall RFC assessment; and (2) improperly rejected plaintiff's subjective testimony about the intensity, persistence, and limiting effects of her psychiatric symptoms.

Where, as here, the ALJ finds at step two that a claimant has one or more "severe" impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of "what an individual can still do despite his or her limitations." *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.) (adopting Report & Recommendation of Bianchini, M.J.) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Adams v. Colvin*, 2016 WL 3566859, at *3 (N.D.N.Y. June 24, 2016) (quoting *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (Mordue, J.)).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626 (S.D.N.Y. 2019) (citations omitted).

"In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Adams*, 2016 WL 3566859, at *3 (quoting *Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, at *10 (N.D.N.Y. Sept. 15, 2015) (Suddaby, J.)).

### a. **Medical Source Opinions**

Alexandrea contends the ALJ failed to "adequately account for certain limitations" assessed by both Christina Caldwell, Psy.D., and S. Bhutwala, Ph.D., two medical source opinions in the record. Pl.'s Mem. at 14.[5]

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[6] The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Martin v. Colvin*, 2016 WL 1383507, at *5 (N.D.N.Y. Apr. 7, 2016) (citation omitted).

The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Martin*, 2016 WL 1383507, at *5 (quoting *Cobbins v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 126, 134 (N.D.N.Y. 2012)).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Martin*, 2016 WL 1383507, at *5 (quoting *Snell v. Apfel*, 177 F.3d 128,

---

[5] Pagination corresponds with CM/ECF.

[6] On January 18, 2017, the Social Security Administration made revisions to the rules regarding the evaluation of medical evidence. Because plaintiff's claim was filed before March 27, 2017, the prior policies govern here. *See, e.g., Daniels on behalf of D.M.G. v. Comm'r of Soc. Sec.*, 2018 WL 5019746, at *6 n.13 (S.D.N.Y. Sept. 30, 2018) (explaining the elimination of the treating physician rule and related changes); *Perez v. Comm'r of Soc. Sec.*, 2019 WL 359980, at *6-*7 nn. 6-8 (E.D.N.Y. Jan. 29, 2019) (explaining various changes effective to claims filed after March 27, 2017).

133 (2d Cir. 1999)). And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. *Id*. (citation omitted). In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Id*. (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Beyond this so-called "treating physician rule," the same six factors set forth above apply with equal force to the evaluation of the remaining categories of medical evidence recognized by the Regulations: the "acceptable" and "other" sources mentioned earlier. *Martin*, 2016 WL 1383507, at *5. The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists." *Id*. (citation omitted). The latter category, deemed "other" in Administration parlance, are "ancillary providers such as nurse

practitioners, physician assistants, licensed clinical social workers, and therapists." *Id*.

Importantly, only evidence from a "treating" or "acceptable" source can be relied upon to establish the *existence* of a medically determinable impairment. *Martin*, 2016 WL 1383507, at *5 (citation omitted). However, evidence from all three sources "can be considered when determining severity of impairments and how they affect individuals' ability to function." *Id*.

Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion, an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

Alexandrea argues the ALJ's RFC finding should have included greater limitations in her ability to interact with others (including co-workers, supervisors, and the public) and, relatedly, in her ability to deal with stress. Plaintiff's challenge implicates three medical opinions in the record: (1) a January 9, 2015 psychiatric evaluation by Christina Caldwell, Psy.D., a consultative examiner; (2) a January 20, 2015 opinion by S. Bhutwala, Ph.D., a state agency psychological consultant; and (3) an August 22, 2014 progress note by Dawn M. Rung, LMSW, a licensed master social worker.

On January 9, 2015, Dr. Caldwell conducted a consultative psychological evaluation of Alexandrea. R. at 405-09. Dr. Caldwell's medical source statement concluded that plaintiff evidenced no limitations in her ability to follow and understand simple directions and instructions or in her ability to maintain attention and concentration, a regular schedule, or in

her ability to learn new tasks. *Id*. at 407-08.

However, Dr. Caldwell concluded that Alexandrea evidenced "mild to moderate limitation" in her ability to perform simple tasks independently, "moderate limitation" in her ability to perform "complete [*sic*] tasks independently," and "moderate limitation" in her ability to make appropriate decisions. R. at 407-08. Dr. Caldwell further concluded that plaintiff evidenced "moderate to marked limitation in the ability to relate adequately with others and ot appropriately deal with stress." *Id*.

On January 20, 2015, state agency consultant Dr. Bhutwala reviewed Alexandrea's record, including Dr. Caldwell's recent consulting opinion, before concluding that plaintiff "retain[ed] the ability for simple work in a low contact setting." R. at 128-39. As with Dr. Caldwell's opinion, Dr. Bhutwala acknowledged that plaintiff suffered from a number of limitations in her ability to handle more complex tasks as well as "moderate" limitations in her ability to work with others, including supervisors, co-workers, and the general public. *Id*.

Alexandrea argues the ALJ's RFC fails to match up with these findings. According to plaintiff, the ALJ did not account for limitations in how frequently plaintiff would be able to interact with others. In plaintiff's view, the ALJ failed to consider how plaintiff's "moderate to marked" limitation in the ability to relate adequately with others would impact her ability "to tolerate the supervision necessary to help her complete tasks." Pl.'s Mem. at 16.

Alexandrea links this argument to her related claim that the ALJ failed to account for the specific limitations posed by her difficulties with work-related stress. Plaintiff argues that the ALJ totally failed to account for "what causes [p]laintiff's stress and how it affects her." Pl.'s Mem. at 17. In support of this claim, plaintiff points to the August 22, 2014 progress note that memorializes one of plaintiff's therapy sessions with Ms. Rung. R. at 372.

There, Ms. Rung indicated that she was "not opposed" to Alexandrea doing some volunteer work, but felt that it should be limited to no more than "10 to 15 hours a week because of several factors that [plaintiff] continues to struggle with."  R. at 372.  In Ms. Rung's opinion, it was not "feasibl[e]" for plaintiff to "try working part-time" while her application for SSI remained pending.  *Id*.

Alexandrea emphasizes that Ms. Rung's reluctance to support her plan to return to work, even on a part-time basis, clearly springs from "the simple fact that going back to work would cause a change in Plaintiff's life [that] could cause her to decompensate."  Pl.'s Mem. at 18.  In support of that argument, plaintiff points out that a change in her environment caused her to decompensate in November 2015, when she required six days of inpatient treatment after moving to South Carolina.  *Id*.

Upon review, these arguments are rejected.  In essence, Alexandrea faults the ALJ because his final RFC finding does not precisely track the findings of any one medical opinion in the record.  But "there is no requirement that the ALJ pick one RFC and use that particular evaluation in its entirety."  *Kitka v. Comm'r of Soc. Sec.*, 2016 WL 825258, at *9 (N.D.N.Y. Feb. 9, 2016) (Report & Recommendation) (Baxter, M.J.), *adopted by* 2016 WL 865301 (N.D.N.Y. 2, 2016).

Rather, "it is the ALJ's responsibility to 'choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment.'"  *Robles v. Colvin*, 2016 WL 814926, at *4 (N.D.N.Y. Feb. 29, 2016) (quoting *Crofoot v. Comm'r of Soc. Sec.*, 2013 WL 5493550, at *8 (N.D.N.Y. 2013)).

Alexandrea correctly argues that her ability to handle work-related stress is an important component of the RFC determination.  "Because stress is highly individualized,

mentally impaired individuals may have difficulty meeting the requirements of even so-called low stress jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work." *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) (citation omitted).

However, "even without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations. For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations." *Herb*, 366 F. Supp. 3d at 447.

The ALJ discharged his duty in this case by assessing a number of limitations in Alexandrea's ability to perform work-related mental tasks, and by including a number of specific restrictions in recognition of plaintiff's ability to handle work-related stressors. *See, e.g.*, R. at 15 ("[S]he can make simple decisions directly related to the completion of her tasks and work in a position where she is not responsible for the work of others and with little change in daily routine, work duties or processes."). Plaintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand. Accordingly, this argument will be rejected.

### b. **Subjective Testimony**

Second, Alexandrea argues the ALJ improperly assessed her credibility. Specifically, plaintiff argues the ALJ discounted her testimony for three inappropriate reasons: (1) she never worked at substantial gainful activity levels; (2) she was not receiving mental health treatment at the time of her first hospitalization; and (3) she indicated a desire to return to

school or to work. Pl.'s Mem. at 18.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Adams*, 2016 WL 3566859, at \*7 (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).

"Where the record evidence does not fully support a claimant's testimony, the ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms." *Adams*, 2016 WL 3566859, at \*7 (citations omitted). "First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work." *Id*.

"At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. *Adams*, 2016 WL 3566859, at \*7 (citations omitted).

"As before, an ALJ's '[f]ailure to expressly consider every factor set forth in the

regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'" *Adams*, 2016 WL 3566859, at *8 (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 345 (W.D.N.Y. 2015).

"In other words, an ALJ 'must discuss the relationship between the plaintiff's medically determinable impairment, the plaintiff's reported symptoms, his conclusions regarding the plaintiff's functioning, and why the plaintiff's reported symptoms are or are not consistent with the evidence in the record.'" *Adams*, 2016 WL 3566859, at *8 (quoting *Deeley v. Astrue*, 2011 WL 454505, at *5 (N.D.N.Y. Feb. 3, 2011) (Scullin, J.)).

Upon review, this argument is also rejected. At the outset, the ALJ acknowledged that Alexandrea experienced limiting effects arising from her subjective symptomatology. *See* R. at 16 ("This does not mean the claimant has no pain or symptoms."). However, the ALJ offered five reasons why he elected against fully crediting plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms." *Id*.

Alexandrea is correct that these reasons included her poor work history, the circumstances surrounding her brief hospitalization in January of 2014, and her desire to return to school or work. R. at 16-17. But there is nothing inappropriate about considering these factors in the context of a larger discussion of the record evidence.

A closer look at the ALJ's credibility determination reveals that Alexandrea's challenge relies on mischaracterizations of his reasoning. For instance, plaintiff reads the ALJ's mention of her poor work history and his observation that she expressed the desire to return to work or school to mean that the ALJ assumed she "was simply lazy." Pl.'s Mem. at 17.

But the ALJ never called Alexandrea lazy. Rather, the ALJ noted that plaintiff's poor

work history "demonstrates a limited attachment to the labor force" and that plaintiff "indicated a desire to return to work and/or school." R. at 16-17. It is beyond cavil that the ALJ "is entitled to consider a claimant's work history when assessing credibility, though it is only one factor out of many and not by itself dispositive." *Lugo v. Comm'r of Soc. Sec.*, 2017 WL 4005621, at *11 (N.D.N.Y. Sept. 11, 2017) (Suddaby, J.).

To that end, there is nothing wrong with observing, as Dr. Caldwell also did in this case, that Alexandrea was fired from two jobs and laid off from a third, R. at 405, or that plaintiff's own testimony about these jobs indicated she was fired for reasons that might well have been unrelated to her mental symptomatology, *id*. at 104-06 (hearing testimony).

This kind of evidence is at least slightly helpful in assessing the overall credibility of Alexandrea's claim that the limiting effects of her mental impairments still preclude her from doing any work. *Cf. Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."). This is especially so when the record makes clear that the ALJ considered the challenged factors as just two among many others in assessing plaintiff's credibility. *See* R. at 16-17.

Alexandrea further objects to the ALJ's observation that, at the time of her "very brief hospitalization in January 2014," she "was not receiving any mental health treatment, and she was not on any medication." R. at 16. According to plaintiff, this observation is totally inappropriate: "[t]o find that she cannot be believed because she did not seek treatment until she had a psychotic break is illogical. It is akin to saying that someone with a heart condition cannot be believed because they did not seek treatment prior to having a heart attack[.]" Pl.'s Mem. at 19-20.

Again, though, this argument is a mischaracterization of the ALJ's reasoning. Where, as here, a claimant testifies that the limiting effects of their impairments render gainful employment impossible, the ALJ is obligated to determine whether or not the claimant's statements about their subjective, day-to-day experience of pain and other symptoms matches up with the rest of the record.

The ALJ is often looking to see whether a claimant's testimony during the benefits hearing is in line with statements they have made to their own treatment providers at some point in the past. This inquiry by the ALJ is typically warranted, because a claimant's condition is usually not static. Some symptomatology abates or even disappears with appropriate treatment. Some do not. After all, treatment for some symptoms or conditions might exacerbate others or even cause new ones.

In other cases, the ALJ is trying to figure out whether the claimant might be malingering. For instance, assume that a claimant initially presented to doctors with severe symptomatology arising from a medical condition, received treatment for that condition, and later reported to medical providers that the treatment lessened the symptoms associated with that condition. This hypothetical claimant would rightly draw some measure of scrutiny from the fact finder if he or she later went on to claim to other entities—such as those responsible for meting out disability benefits, like an ALJ—that the symptoms remained so severe as to be totally disabling.

But even that is not what happened here. Rather, the ALJ noted Alexandrea's hospitalization in January of 2014 to signal a recognition that, at one point, plaintiff's symptomatology was severe enough to warrant an inpatient hospital stay of some duration. R. at 16. The ALJ then cited plaintiff's subsequent treatment—including

counseling and medication—as evidence that her condition did not remain static; *i.e.*, treatment improved the condition and lessened the symptoms that led to the hospital stay in the first place. *Id*. This improvement is documented in progress notes throughout 2014, 2015, and 2016, and these notes are discussed seriatim by the ALJ. *Id*. at 16-17.

In other words, contrary to Alexandrea's misleading assertion, the ALJ did not cite plaintiff's hospitalization as evidence that she should not be believed. Rather, plaintiff's hospitalization, and the subsequent course of treatment following her hospitalization, provided context for understanding where plaintiff's symptoms stood at the time she testified about their continued severity before the ALJ. Accordingly, this argument will be rejected.

## IV. **CONCLUSION**

The ALJ applied the appropriate legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. Alexandrea's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Alexandrea's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: May 28, 2019
      Utica, New York.

_____
United States District Judge